## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAMES GRAY, individually as surviving father and heir at law of deceased CAMERON GRAY, et al., | |
| **Plaintiffs,** | Case No. 23-1032-DDC-RES |
| **v.** | |
| **MIDWEST MATERIALS BY MUELLER, INC., et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs James Gray[1] and Irene Rogge's[2] "Motion Requesting Settlement Approval and Dismissal with Prejudice" (Doc. 53). Plaintiffs ask the court to approve a proposed settlement that would resolve all disputes in this case. On September 20, 2023, the court conducted the statutorily required settlement hearing via Zoom video. Plaintiffs and their attorneys, Luis Fabrega, Larry Wall, and Brooks Tobin appeared virtually. Defendants Midwest Materials by Mueller, Inc. and Camran Blake Bruna appeared virtually by their attorney, Michelle Cocayne. As explained below, the court grants the motion.

### I.    Findings of Fact

The court, after reviewing the parties' submissions and hearing the testimony presented at the hearing, finds as follows:

---

[1]    James Gray brings this action individually, as the surviving father and heir at law of Cameron Gray, deceased.

[2]    Irene Rogge brings this action individually, as the surviving mother and heir at law of Cameron Gray, deceased.

1.      Plaintiff James Gray, Cameron Gray's father, and plaintiff Irene Rogge, Cameron Gray's mother, are the only heirs at law of decedent Cameron Gray.

2.      Plaintiff James Gray testified that he enjoyed an excellent relationship with his son.

3.      Plaintiff Irene Rogge testified that she, too, enjoyed an excellent relationship with her son.

4.      In this action, plaintiffs seek damages for defendants' negligence in a vehicle crash that killed decedent Cameron Gray on October 19, 2022.

5.      Plaintiffs, through counsel, investigated the facts and circumstances of the crash, decedent Cameron Gray's death, and potential damages.  Plaintiffs' counsel hired experts and a consultant.

6.      This lawsuit settled after the parties had engaged in discovery and taken depositions.

7.      The parties negotiated a settlement that, if approved, would provide defendants a full and complete release from liability, and settle all claims against defendants for decedent Cameron Gray's injuries and death under the terms of the release document.

8.      The parties bargained for a confidential settlement.[3]  To evaluate the reasonableness of the settlement and maintain the settlement's confidentiality, the court ordered plaintiffs' counsel to submit information about the settlement to the court via email for in camera review.

---

[3]      The court has intentionally omitted references to the settlement amounts in this Order because the parties' settlement agreement includes a confidentiality clause.  During the September 20, 2023, hearing, the court heard the parties' arguments for keeping the settlement figures confidential and finds that the interest in preserving the actual amount of their confidential settlement negotiations outweighs the public interest in accessing the settlement amounts.  *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978) (explaining that while the public has a "general right to inspect and copy public records and documents," the right is not absolute).

Specifically, plaintiffs' counsel explained that the parties valued a confidentiality provision governing the settlement.  Counsel explained that the confidentiality provision was material to the parties' decision to settle this contested case and that nullifying the provision would subvert the parties' agreement.  The courts long have recognized a public interest supporting private efforts to resolve litigation.  This interest does not conflict with other public interests identified by Kansas and federal law.

9.     Plaintiffs retained Larry Wall of Larry Wall Trial Law and Luis Fabrega, Brooks Tobin, and Robert Ammons of the Ammons Law Firm as their counsel and representatives to prosecute this case.  Plaintiffs' counsel investigated both the law and facts of this case thoroughly and advised plaintiffs whether they should settle the action against defendants for a confidential amount.

10.     Plaintiffs' attorneys entered into a fee agreement with plaintiffs and this agreement entitled counsel to attorneys' fees in a specified proportion, plus expenses.  At the hearing and in plaintiffs' motion papers, counsel and plaintiffs asked the court to approve the amount of attorneys' fee recovery.

11.     Plaintiffs testified that they understand the settlement, if approved, would constitute full satisfaction of all claims against defendants.  They requested that the court approve the agreed upon attorneys' fees and case expenses to their attorneys and apportion the recovery, as required by Kan. Stat. Ann. § 60-1905.

12.     At the September 20, 2023, settlement apportionment hearing, the parties asked the court to approve plaintiffs' attorneys' fees and costs and apportion the settlement proceeds equally between plaintiff James Gray and plaintiff Irene Rogge.

---

In the Kansas Wrongful Death Act, the Kansas Legislature recognized a public policy interest in court approval of specified aspects of lawsuits brought under that Act.  As this Order discusses, the Kansas Wrongful Death Act requires court approval of how a settlement *apportions* the settlement's proceeds among a decedent's heirs.  *See* Kan. Stat. Ann. § 60-1905.  But the Act does not require court approval of the settlement *amount*.  *Cf. Adams v. Via Christi Reg'l Med. Ctr.*, 19 P.3d 132, 137–39 (Kan. 2001) (explaining Kan. Stat. Ann. § 60-1903's requirement for a court or jury "to award fair and just damages" is "associated with trials and verdicts" but not settlements).  Given the legislature's expression of the public interest, the court concludes that the public's interest in the actual amount of the parties' agreement does not outweigh the interest that the parties assigned to resolving disputed litigation on a confidential basis.

## II.        Legal Standard

The Kansas Wrongful Death Act requires the court to apportion the recovery in a Kansas

Wrongful Death Act case after conducting a hearing.  Kan. Stat. Ann. § 60-1905.  It provides that

the court, first, should allow costs and reasonable attorneys' fees for plaintiffs' counsel.  *Id.*  The

act then directs the court to apportion the recovery among the heirs in proportion to the loss

sustained by each one.  *Id.*; *see also Flowers v. Marshall*, 494 P.2d 1184, 1187 (Kan. 1972)

(explaining that the statute "provides for an apportionment among the heirs of any amount

recovered to be made by the trial court according to the loss sustained by each.").  The full text

of Kan. Stat. Ann. § 60-1905 provides:

> The net amount recovered in any such action, after the allowance by the judge of
> costs and reasonable attorneys fees to the attorneys for the plaintiffs, in accordance
> with the services performed by each if there be more than one, shall be apportioned
> by the judge upon a hearing, with reasonable notice to all of the known heirs having
> an interest therein, such notice to be given in such manner as the judge shall direct.
> The apportionment shall be in proportion to the loss sustained by each of the heirs,
> and all heirs known to have sustained a loss shall share in such apportionment
> regardless of whether they joined or intervened in the action; but in the absence of
> fraud, no person who failed to join or intervene in the action may claim any error
> in such apportionment after the order shall have been entered and the funds
> distributed pursuant thereto.

The Kansas Wrongful Death Act allows recovery of damages for the following kinds of

loss:  (1) mental anguish, suffering, or bereavement; (2) loss of society, companionship, comfort,

or protection; (3) loss of marital care, attention, advice, or counsel; (4) loss of filial care or

attention; (5) loss of parental care, training, guidance, or education; and (6) reasonable funeral

expenses for the deceased.  Kan. Stat. Ann. § 60-1904.  The statute thus allows the court to

apportion both pecuniary and non-pecuniary losses.  *Turman v. Ameritruck Refrigerated Transp.,*

*Inc.*, 125 F. Supp. 2d 444, 450–55 (D. Kan. 2000); *see also* Kan. Stat. Ann. § 60-1903

(describing damages the court or jury may award in a wrongful death action).  Pecuniary

damages are those that "'can be estimated in and compensated by money.'"  *Turman*, 125 F.

4

Supp. 2d at 453 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)).  Pecuniary damages

in a wrongful death action "'should be equivalent to those pecuniary benefits or compensation

that reasonably could have resulted from the continued life of the deceased.'"  *Id.* (quoting

*McCart*, 641 P.2d at 391).  In Kansas, pecuniary damages "include losses of such things as

marital or parental care, services, training, advice, and financial support."  *Id.*

Non-pecuniary damages, on the other hand, are generally intangible and may include

compensation for "'mental anguish, bereavement, loss of society, and loss of companionship.'"

*Id.* at 451 (quoting *McCart*, 641 P.2d at 391).  "The Kansas Supreme Court has recognized that

'while these [intangible damages] are nebulous and impossible to equate satisfactorily with

money, they nonetheless are very real and onerous to a bereaved [family member], often far

outweighing in severity and permanent effect the pecuniary loss involved.'"  *Id.* (quoting

*Corman v. WEG Dial Tel., Inc.*, 402 P.2d 112, 115 (Kan. 1965)).

### III.     Analysis

The court addresses each aspect of the proposed settlement in the order that Kan. Stat.

Ann. § 60-1905 presents them, starting with costs.

Kan. Stat. Ann. § 60-1905 allows the court to award counsel the reasonable costs

incurred during the litigation.  *Newton v. Amhof Trucking, Inc.*, 385 F. Supp. 2d 1103, 1108–09

(D. Kan. 2004).  Counsel submitted an affidavit that explains that this settlement includes over

$47,400 in costs and expenses.  Later, counsel provided an exact figure:  $47,433.37.  At the

hearing, plaintiffs' counsel explained that this amount includes a mediation fee, costs for

deposition transcripts and videos, fees for multiple experts, a consultant fee, travel expenses, and

evidence storage and transportation.  The documents submitted to the court for in camera review

confirm counsel's assertion.  And both plaintiffs asserted that these expenses, in their judgment,

are fair and reasonable.  The court thus concludes that the proposed costs and expenses are reasonable.

Next:  attorneys' fees. Kan. Stat. Ann. § 60-1905 "requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case." *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999).  "The general rule is that an attorney is entitled to the reasonable value of services performed for the client." *Id.*  When deciding whether a requested fee is reasonable, the court considers the factors set forth in Kansas Rule of Professional Conduct 1.5(a).  *Id.*  Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Kan. R. Prof'l Conduct 1.5(a).

Plaintiffs' counsel and plaintiffs entered into a two-tier contingency fee agreement.  The agreement provides for a 33.33% contingency fee up to a certain monetary threshold.  Once the recovery exceeds that monetary threshold, the agreement provides for a 40% contingency fee. The parties reached this arrangement after bargaining with one another.  And plaintiffs were represented by independent counsel, *i.e.*, attorneys distinct from and independent of the attorneys representing them in this wrongful death action.  The court has reviewed timesheets that plaintiffs' counsel submitted for in camera review.  After reviewing the record and testimony, the court concludes that the factors favor a finding that counsel's fee request is reasonable.  Our court has approved attorneys' fees within the 33.33–40% range as reasonable in other cases apportioning wrongful death proceeds under Kan. Stat. Ann. § 60-1905. *Sedlock v. Overland*

*Park Med. Invs., LLC*, No. 19-2614-DDC, 2021 WL 1056516, at *5 (D. Kan. Mar. 19, 2021) (finding that the attorneys' 40% contingency fee was reasonable in a wrongful death action); *Turman*, 125 F. Supp. 2d at 448 ("[I]n [the court's] experience . . . a one-third contingency fee is not uncommon in wrongful death actions[.]").  Also, granting this request "honors an agreement bargained for by competent adults."  *Roth v. Builder's Stone & Masonry, Inc.*, No. 19-2747-DDC-GEB, 2020 WL 7633973, at *3 (D. Kan. Dec. 22, 2020) (approving fee request under Kan. Stat. Ann. § 60-1905).  The court thus concludes that the attorneys' fee award contemplated by plaintiffs' contingent fee arrangement is a reasonable fee arrangement in the circumstances of this case.

Last, the court must consider how to apportion the remaining wrongful death settlement proceeds, after deducting the costs and attorneys' fees.  Plaintiffs each confirmed that they have reviewed the settlement documents and are satisfied with the work their attorneys performed. Plaintiffs James Gray and Irene Rogge ask the court to split the remaining settlement proceeds equally between them.  Plaintiffs testified that they are decedent Cameron Gray's parents, and his only heirs at law.  Plaintiffs also testified that they have sustained an equally tragic loss and agreed to an equal allocation.  After considering the evidence at the hearing, the court concludes the proposed equal apportionment between James Gray and Irene Rogge is appropriate.

## IV.      Conclusion

As explained in this Memorandum and Order, the court grants plaintiffs' "Motion Requesting Settlement Approval and Dismissal with Prejudice" (Doc. 53).  The court approves the $47,433.37 in costs and expenses.  The court approves the two-tiered contingency fee arrangement, with a 33.33% contingency fee up to a certain figure, and 40% beyond that threshold.  And the court apportions the remaining settlement proceeds equally between plaintiff James Gray and plaintiff Irene Rogge.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' "Motion Requesting Settlement Approval and Dismissal with Prejudice" (Doc. 53) is granted on the terms specified in this Order.  The court approves counsel's cost and fee request and apportions the settlement proceeds in the fashion described by this Memorandum and Order.

**IT IS SO ORDERED.**

**Dated this 22nd day of September, 2023, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**